*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re SCHAEFER/MITTEER/VEST, Minors.

UNPUBLISHED
April 14, 2022

No. 359609
Mason Circuit Court
Family Division
LC No. 21-000036-NA

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

In these child-protective proceedings, respondent-mother appeals as of right the trial court's order following a preliminary hearing. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This matter involves five minor children: LS, BM, JV, DV, and HV. Respondent-mother is the biological mother of LS, BM, and HV. Respondent-father is the legal father of JV, DV, and HV.[1]

On November 8, 2021, a petition was submitted alleging that it was contrary to the welfare of the children for the children to remain in the home because there were "significant concerns within the household of [respondent-mother] and [respondent-father] including failure to protect from sexual abuse, maltreatment, physical abuse, and physical neglect." The petition alleged that the Department of Health and Human Services (DHHS) received a complaint on October 26, 2021, after LS ran away from home, regarding abuse that was occurring in respondents' home. The petition contained allegations of physical abuse by both respondent-mother and respondent-father against LS and the other children. The petition further alleged that LS reported being sexually abused by another relative and by respondent-mother's boyfriend, that LS had told respondent-mother about the sexual abuse, and that respondent-mother had refused to believe her and called LS a "liar" and a "whore." Additionally, there were allegations that there had been an extensive bed bug infestation in the home for over a year that had resulted in the children incurring numerous

---

[1] Respondent-father is not a party to this appeal.

bites and that respondent-mother refused to acknowledge. Two of the children reported being told by their parents not to talk to anyone about what happens in the home.

The petition described the efforts made to avoid removal. According to the petition, respondent-mother "received counseling services in 2013 that focused on non-physical forms of discipline as part of an ongoing CPS case," and respondent-mother received cash assistance in 2014. Respondent-mother was also currently receiving food and Medicaid services from the DHHS. The petition requested that all five children be removed from the home and that the trial court terminate respondent-mother's parental rights to LS.

A preliminary hearing was held on the same day that the petition was submitted. Respondent-mother received service of the petition the morning of the hearing. At the time of the hearing, the children had not been removed. The only witness at the hearing was Heather Hockanson, a Mason County DHHS children's protective services investigator who submitted the petition in this case. Hockanson's testimony was consistent with the allegations in the petition.

Following the testimony from Hockanson, respondent-mother's attorney objected to the hearing taking place, alleging that respondent-mother was not provided enough time to subpoena witnesses. This objection was overruled. Respondent-mother's attorney reiterated this objection again later in the hearing, arguing that the trial court had the authority under MCR 3.965(A)(1) and (B)(11) to adjourn for up to 14 days to allow for the securing of witnesses. She noted that respondent-mother was served with the petition on the day of the hearing and that there were "multiple witnesses" who could have been presented "to refute the allegations" had respondent-mother been given time to subpoena those witnesses. Respondent-mother's attorney further alleged that respondent-mother had "evidence to refute the allegations contained in the petition" but there had not been enough time to review and bring forth this evidence for the preliminary hearing.

Additionally, respondent-mother's attorney argued that she was not provided the opportunity to review investigatory material prior to the hearing as she was entitled under statute. Respondent-mother's attorney maintained that there was good cause to adjourn the preliminary hearing pursuant to the court rule. Next, respondent-mother's attorney objected to the service of the petition and argued that although respondent-mother was present at the hearing, she was entitled to service three days before the hearing if the children had not already been removed. Finally, respondent-mother's attorney objected to the removal of the children on the basis that there had been no showing of "causal connection" or anticipatory neglect by respondent-mother.

The trial court denied the request to adjourn the hearing, reasoning that the allegations were serious and required immediate action. The court found that there was probable cause that one or more of the petition allegations were true and would establish a basis for the court's jurisdiction. The trial court also found that it was necessary to take the children into protective custody, particularly finding that the children had been subjected to physical abuse, lack of protection from sexual abuse, exposure to bed bugs, and being told not to discuss what happened in the home. The trial court authorized the filing of the petition. Respondent-mother now appeals.

## II. ADJOURNMENT

Respondent-mother first argues that the trial court erred by refusing to adjourn the preliminary hearing, thereby denying respondent-mother's due-process right to a meaningful hearing.

"Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Sanders*, 495 Mich 394, 403-404, 852 NW2d 524 (2014). This Court's review of the interpretation and application of statutes and court rules is also de novo. *Id*. at 404. We review a trial court's decision on a request for adjournment for an abuse of discretion. *People v Daniels*, 311 Mich App 257, 264-265; 874 NW2d 732 (2015). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*. at 265.

MCR 3.965(A)(1) provides that if a child is already in protective custody, "[t]he preliminary hearing must commence no later than 24 hours after the child has been taken into protective custody, excluding Sundays and holidays, as defined by MCR 8.110(D)(2), unless adjourned for good cause shown, or the child must be released." It is undisputed that the minor children in this case were not in protective custody before the preliminary hearing commenced. However, the petition contained allegations that LS had been sexually abused and that respondent-mother had failed to take action to protect LS from sexual abuse after being made aware of the abuse. MCR 3.965(A)(2) states that "[w]hen the Department of Human Services submits a petition in cases in which the child has been . . . sexually abused, and subrule (A)(1) does not apply, the preliminary hearing must commence no later than 24 hours after the agency submits a petition or on the next business day following the submission of the petition."

However, MCR 3.965(B)(11) provides in relevant part as follows:

> The court may adjourn the hearing for up to 14 days to secure the attendance of witnesses or for other good cause shown . . . . If the preliminary hearing is adjourned, the court may make temporary orders for the placement of the child when necessary to assure the immediate safety of the child, pending the completion of the preliminary hearing and subject to subrule (C) . . . .[2]

Here, respondent-mother argues that the trial court denied her fundamental due-process right to a meaningful hearing by rejecting her request to adjourn the hearing to allow her to subpoena witnesses and gather other evidence to refute the petition allegations. However, respondent-mother has not identified any witnesses whom she would have subpoenaed if given

---

[2] MCR 3.965(C)(1) states in pertinent part:

> If the child was not released under subrule (B), the court shall receive evidence, unless waived, to establish that the criteria for placement set forth in subrule 3.965(C)(2) are present. The respondent shall be given an opportunity to cross-examine witnesses, to subpoena witnesses, and to offer proofs to counter the admitted evidence.

the opportunity, or specified the content of this anticipated testimony. Respondent-mother has also not identified any specific evidence that she would have presented at the preliminary hearing had she been granted an adjournment, or what this evidence would have shown. As in the trial court, respondent-mother merely claims generally on appeal that she could have presented "multiple witnesses" and "evidence" to "refute the allegations" in the petition.

This Court has held that a violation of MCR 3.965 can be harmless error not requiring reversal if the violation was not decisive to the outcome or, more specifically, if the respondent fails to make any "offer of proof as to what specific further evidence could have been admitted or how it could have helped her position." *In re Williams*, 333 Mich App 172, 181-182; 958 NW2d 629 (2020). Establishing entitlement to appellate relief for a violation of due-process rights in this context requires the respondent to demonstrate prejudice. See *id*. at 179-182; see also *Daniels*, 311 Mich App at 266 ("Even with good cause and due diligence, the trial court's denial of a request for an adjournment . . . is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion.") (quotation marks and citation omitted; ellipsis in original).

In this case, respondent-mother's vague assertions that she could have provided additional "witnesses" or "evidence" to "refute the allegations," without any more detailed offer of proof, are insufficient to establish that she was prejudiced by the trial court's denial of her request to adjourn the preliminary hearing. She therefore has not demonstrated error requiring reversal on this ground. *In re Williams*, 333 Mich App at 179-182; see also *Daniels*, 311 Mich App at 266

Next, respondent-mother argues that she was entitled to discovery before the preliminary hearing pursuant to MCR 3.922(A)(1) and that the preliminary hearing should have been adjourned until after she received that discovery. MCR 3.922(A)(1) is applicable to discovery in child protective proceedings[3] and provides a list of materials that "are discoverable as of right in all proceedings and shall be produced no less than 21 days before *trial*, even without a discovery request." (Emphasis added.)

However, the trial has not yet occurred in these proceedings. Respondent-mother has appealed from the trial court's order following the preliminary hearing. "At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020) (quotation marks and citation omitted). The trial in a child-protective proceeding occurs after the petition has been authorized. See MCR 3.903(A)(27) (" 'Trial' means the fact-finding adjudication of an authorized petition to determine if the minor comes within the jurisdiction of the court. 'Trial' also means a specific adjudication of a parent's unfitness to determine whether the parent is subject to the dispositional authority of the court."); see also MCR 3.972(A); *In re Sanders*, 495 Mich at 405. Because these proceedings have not yet progressed to the adjudication trial, respondent-mother cannot show that there has been a violation of MCR 3.922(A)(1) for failing to produce discovery materials "no less than 21 days before trial."

---

[3] See MCR 3.901(B)(1).

Respondent-mother also argues that she received insufficient notice of the preliminary hearing, alleging that she received notice approximately one hour before the scheduled preliminary hearing. She contends that the trial court erred by not adjourning the hearing based on "improper service under MCR 3.920(D)(1), (3) and MCR 3.920(B)(5)."

Respondent-mother does not claim that she did not receive notice of the hearing or a summons to appear; she concedes in her brief on appeal that she received the notice and summons. It is also undisputed that respondent-mother attended the preliminary hearing in this case and had an opportunity to confer with counsel before the hearing began. Respondent-mother acknowledges that she was present at the hearing but argues that she did not waive her challenge to the alleged defects in service because she specifically objected to the timing of service and placed this objection on the record during the hearing. See MCR 3.920(H) ("The appearance and participation of a party at a hearing is a waiver by that party of defects in service with respect to that hearing unless objections regarding the specific defect are placed on the record."). The sole argument advanced by respondent-mother is that the preliminary hearing should have been adjourned because notice of the hearing and service of process were not accomplished sufficiently in advance of the scheduled hearing.

Respondent-mother relies on the following provisions of MCR 3.920:[4]

> (A) General.
>
> (1) Unless a party must be summoned as provided in subrule (B), a party shall be given notice of a juvenile proceeding in any manner authorized by the rules in this subchapter.
>
> * * *
>
> (B) Summons.
>
> (1) In General. A summons may be issued and served on a party before any juvenile proceeding.
>
> (2) When Required. Except as otherwise provided in these rules, the court shall direct the service of a summons in the following circumstances:
>
> * * *
>
> (b) In a child protective proceeding, a summons must be served on any respondent and any nonrespondent parent. A summons may be served on a person having physical custody of the child directing such person to appear with the child

---

[4] For purposes of providing greater clarity and context, our quotation of the relevant portions of MCR 3.920 includes provisions that were not specifically cited by respondent-mother.

for hearing. A guardian or legal custodian who is not a respondent must be served with notice of hearing in the manner provided by subrule (D).

\* \* \*

(5) Time of Service.

(a) A summons shall be personally served at least:

(i) 14 days before hearing on a petition that seeks to terminate parental rights or a permanency planning hearing,

(ii) 7 days before trial or a child protective dispositional review hearing, or

(iii) 3 days before any other hearing.

\* \* \*

(D) Notice of Hearing.

(1) General. Notice of a hearing must be given in writing or on the record at least 7 days before the hearing except as provided in subrules (D)(2) and (D)(3), or as otherwise provided in the rules.

(2) Preliminary Hearing; Emergency Removal Hearing.

\* \* \*

(b) When a child is placed outside the home, notice of the preliminary hearing or an emergency removal hearing under MCR 3.974(C)(3) must be given to the parent of the child as soon as the hearing is scheduled. The notice may be in person, in writing, on the record, or by telephone.

(3) Permanency Planning Hearing; Termination Proceedings.

(a) Notice of a permanency planning hearing must be given in writing at least 14 days before the hearing.

(b) Notice of a hearing on a petition requesting termination of parental rights in a child protective proceeding must be given in writing at least 14 days before the hearing.

As an initial matter, respondent-mother ignores the application of additional timing requirements in the court rules that were implicated under these circumstances. We have already noted that the petition allegations regarding the sexual abuse of LS and respondent-mother's failure to protect LS from that abuse implicated MCR 3.965(A)(2) requiring the preliminary hearing to "commence no later than 24 hours after the agency submits a petition or on the next business day following the submission of the petition." Nonetheless, under MCR 3.965(B)(1),

-6-

The court must determine if the parent, guardian, or legal custodian has been notified, and if the lawyer-guardian ad litem for the child is present. The preliminary hearing may be adjourned for the purpose of securing the appearance of an attorney, parent, guardian, or legal custodian or may be conducted in the absence of the parent, guardian, or legal custodian if notice has been given or if the court finds that a reasonable attempt to give notice was made.

It is difficult to overstate the importance of notice to the concept of due process. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.) (quotation marks and citations omitted).

[A] parent is entitled to procedural due process if the state seeks to terminate his parental rights. The state must make reasonable efforts to notify him of the proceedings and allow him a meaningful opportunity to participate. We evaluate whether a particular parent was afforded minimal due process on a case-by-case basis. [*Id*. at 122.]

In *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314-315; 70 S Ct 652; 94 L Ed 865 (1950), the United States Supreme Court explained regarding the due-process requirement of notice:

The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied. The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals. [*Mullane*, 339 US at 314-315 (quotation marks and citations omitted).]

In this case, respondent-mother undisputedly received notice of the hearing and a summons to appear; she met with counsel before the hearing; she attended the hearing, and she was represented by counsel at the hearing. Under all of the circumstances, it thus appears that the notice was reasonable to allow respondent-mother to appear and participate in the hearing. *Id*. Respondent-mother has not shown that her due-process rights were violated by the denial of her request for an adjournment based on the amount of time between receipt of notice and the preliminary hearing. Furthermore, even if respondent-mother had demonstrated that the timing of notice in this case somehow violated a court rule provision, "[i]t is well-established that a failure to follow the court rules regarding notice requirements does not establish a jurisdictional defect . . . ." *In re SZ*, 262 Mich App 560, 567; 686 NW2d 520 (2004). Had respondent-mother demonstrated the error of which she complains regarding the timing of notice, the error would have been harmless under these circumstances. MCR 2.613(A); MCR 3.902(A).

Based on the foregoing, respondent-mother has not established any error requiring reversal with respect to the trial court's denial of her request for an adjournment.

## III. REMOVAL

Next, respondent-mother challenges the trial court's decision to remove the children from her care and custody, arguing that the trial court erred by finding that there had been reasonable efforts to prevent the removal and that no other remedy existed to protect the children.

Respondent-mother did not argue at the preliminary hearing that petitioner failed to make reasonable efforts to prevent removal or that there were alternative services other than removal reasonably available to adequately safeguard the children. Because respondent-mother failed to raise these issues in the trial court, they are unpreserved and our appellate review is thus for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Under this standard, "respondents must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights. And the error must have 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings[] . . . .' " *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (citations omitted; alterations and ellipsis in original). An error is clear or obvious if it is an error "that is not subject to reasonable dispute." *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. It is respondent-mother's burden to demonstrate prejudice. *In re Pederson*, 331 Mich App at 463.

As we have already noted, the trial court must decide at the preliminary hearing "whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re Benavides*, 334 Mich App at 167 (quotation marks and citation omitted). If the trial court does not decide at the preliminary hearing that the child must be released pursuant to MCR 3.965(B), then the trial court "shall receive evidence, unless waived, to establish that the criteria for placement set forth in subrule 3.965(C)(2) are present." MCR 3.965(C)(1). Under MCR 3.965(C)(2),

> [t]he court may order placement of the child into foster case [sic] if the court finds all of the following:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

-8-

Here, respondent-mother argues on appeal that the trial court's findings under MCR 3.965(C)(2)(b) and (d) were erroneous. The trial court found following the preliminary hearing that it was contrary to the children's welfare to remain in the home and that they were at a substantial risk of harm in respondent-mother's custody because of physical abuse and neglect, exposure to bed bugs, the lack of protection from sexual abuse, and being told not to discuss what occurred in the home. The trial court also found in relevant part:

> There have been reasonable efforts that have been put into place to prevent or eliminate removal. That includes umm, food, Medicaid services, cash assistance, and there's been counseling that's been put into place with this family before.

> Umm, reasonable efforts shall be made to preserve and reunify this family to make it possible for the children to safely return home. That's recommended because reunification is still possible. Reasonable efforts shall be made to preserve and reunify this family.

> As I indicated, there is a substantial risk of harm to the children's life, physical health or mental wellbeing. No pres -- provision of service or other arrangement except removal of the children is reasonable available to adequately safeguard the children from risk of harm to the children's life, physical health or mental wellbeing. Conditions of custody at the placement away from the home and with the individual with whom the children are placed is adequate to safeguard the children's health and welfare.

Respondent-mother essentially argues that the efforts made were not reasonably sufficient to prevent the need for removal, that the DHHS should have made additional efforts or implemented different services, and that the DHHS should have more thoroughly investigated the matter before proceeding to seek removal. However, respondent-mother does not provide any legal authority to support her contention that the efforts found reasonable in this case by the trial court were insufficient. We also note that the testimony at the preliminary hearing indicated that the prior counseling respondent-mother had received was focused on nonphysical forms of discipline and that she had participated in that type of counseling because she had been substantiated for physical abuse of LS.

Based on our review of the record, we perceive no error in the trial court's findings that "[c]onsistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child" or that "[n]o provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described . . . ." MCR 3.965(C)(2)(b) and (d). Respondent-mother's reliance on her mere complaints that the DHHS should have taken different actions without any supporting legal authority somehow establishing that respondent-mother is entitled to appellate relief as a result of the course of action pursued by the DHHS does not suffice to demonstrate any error that is "not subject to reasonable dispute." *In re Pederson*, 331 Mich App at 463. Therefore, respondent-mother has not shown the existence of plain error. *In re Ferranti*, 504 Mich at 29; *In re Pederson*, 331 Mich App at 463. Moreover, although respondent-mother describes several alternate courses of action the DHHS could have taken, her contention that removal would have been prevented rests solely on speculation, which is insufficient to meet her burden of demonstrating the requisite

prejudice. *In re Utrera*, 281 Mich App at 9; *In re Pederson*, 331 Mich App at 463. Respondent-mother has failed to establish plain error requiring reversal.

Finally, respondent-mother argues that even if the trial court were justified in removing LS, there was no evidence warranting the removal of the other children under the doctrine of anticipatory neglect. Respondent-mother relies on *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020), in which this Court explained that "even though jurisdiction may be properly assumed on the basis of the anticipatory-neglect doctrine, that does not also mean that it will always be sufficient."

Because respondent-mother raised this particular argument in the trial court at the preliminary hearing, it is preserved. *In re Utrera*, 281 Mich App at 8. This Court reviews a trial court's factual findings underlying its removal decision for clear error. *In re Benavides*, 334 Mich App at 167. "A finding is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

This Court has explained the general principles of the anticipatory neglect doctrine as follows:

> In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction. "The doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly *probative* of how that parent may treat other children." "Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." [*In re Kellogg*, 331 Mich App at 259 (citations omitted; alteration in original).]

In *In re Kellogg*, this Court vacated the order of adjudication and order of disposition with respect to the youngest of the respondent's two children, while leaving intact the court's assumption of jurisdiction over the older child, because we concluded that "the doctrine of anticipatory neglect is not sufficient to establish statutory grounds for jurisdiction [over the youngest child] in this case." *Id*. at 259-261. This conclusion was based on the lack of evidentiary support for an independent basis to bring the youngest child within the court's jurisdiction under MCL 712A.2(b) and, with respect to application of the doctrine of anticipatory neglect, the "marked and significant differences" between the children that "severely decrease[d] the probative value of the anticipatory-neglect doctrine." *Id*. at 254-258, 260. These differences included not only a large age difference, but also differences in the children's respective histories of trauma, behavioral issues, identity of primary custodial caretaker, diagnosed mental health disorders, and bonding with the respondent-parent. *Id*. at 260-261.

In this case, respondent-mother does not identify any "marked and significant differences" between the minor children that would decrease the probative value of the anticipatory neglect doctrine and she ignores the independent evidence of abuse and neglect specifically relative to children other than LS. There was evidence of an ongoing bed bug infestation in the house that had led to substantial problems among the children with visible bites and difficulty sleeping. There was also evidence of physical abuse against various children with no indication that respondent-mother ever sought to protect the children from physical abuse committed by respondent-father, who lived in the same home with respondent-mother and the children. The evidence that the home

-10-

was infested by bed bugs and that the children were generally subjected to various types of physical abuse committed by both parents, without either parent intervening to protect them, reflects a home environment that presented a risk of harm that was equally present for all of the children. Unlike the factual circumstances that were present in *In re Kellogg*, there is no evidence in this case of significant differences between the children that made any of the children less at risk from being harmed as a result of respondent-mother's abuse and neglect. Accordingly, respondent-mother's reliance on *In re Kellogg* does not establish that the trial court's removal decision was erroneous.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto